COURTNEY, et al v. BLACKWELL CONSTRUCTION CO., et al.

Industrial Commission.

January 25, 1957

George A. Pierce, Jacksonville, for claimants.

Howell & Kirby, Jacksonville, for the employer and insurance carrier.

WILLIAM L. DURDEN, Deputy Commissioner.

After due notice to all interested parties, hearings on this claim were held on December 7, 1956 and January 22, 1957. The claimants were present at each of the hearings and represented by counsel. The employer and carrier were represented by counsel at both hearings.

At the first hearing it was stipulated and agreed that this commission has jurisdiction of the parties and subject matter and that venue is correctly laid in Duval County, that the deceased employee was employed at an average weekly wage of $44.96, that on September 25, 1956 the deceased sustained injuries in an accident

arising out of and in the course of his employment with the employer from which he died when he fell in the river and drowned, and that he had never been married and was single at the time of his death.

There are two claimants. The first is Everlena Courtney who claims to be the dependent aunt of the deceased employee. The second is Everlena Coleman, who is the mother of Everlena Courtney and claims to be the dependent grandmother of the deceased employee.

The deceased employee was Robert Washington, age 24, a colored man. He was born in wedlock to Franklin Washington and Rhodia Badger Washington.

At about and during the time Robert was conceived his presumptive father was gone for about nine months and his mother had an affair with one Rollie Coleman. Neighborhood witnesses established that both Rhodia and Franklin Washington stated that Robert was not the son of Franklin but was the son of Rollie Coleman. Both of the claimants testified to similar conclusions. The carrier submitted no evidence to the contrary. It is therefore held that Robert Washington was in fact the son of Rollie Coleman—making the claimant Everlena Coleman his grandmother and the claimant Everlena Courtney his aunt.

Franklin Washington continued to live with Rhodia for several years after Robert was born and they even had two other children. He deserted the family, however, and has not been heard from in fifteen years. The mother, Rhodia Washington, has been dead for over ten years. The real father, Rollie Coleman, has been dead for about ten years.

Although they claim to have known of Robert being the son of their son and brother, Rollie, they did not assist in raising him at all and he was over 21 before he ever had very much to do with them. As a matter of fact he only visited with them several times a year until he moved in February of 1956—which was about eight months before his death. He paid them $8 a week for which he received room and board. He had given them several dollars a week for several months prior to moving in with them. Before Robert went to live with them they had a boarder who lived there on about the same financial terms as did Robert. When the boarder left they persuaded Robert to move in.

It was established that the claimants treated Robert as a nephew and a grandson and he treated them as an aunt and as a grandmother.

There are two questions to be considered. The first is whether either claimant qualifies as a beneficiary under the Act. If they or either of them do, then we must determine whether she (or they) were in fact dependent upon the deceased for support.

Section 440.16 (2) (e), Florida Statues 1955, provides for the payment of certain compensation to "the parents." Section 440.02 (14) defines the term "parent" as including (so far as applicable here) "any persons who for more than three years prior to the death of the deceased employee stood in the place of a parent to him, and were dependent on the injured employee."

It would seem that a grandmother, or aunt, or anyone who "took the employee to raise" could qualify under that definition. Here, however, neither of the claimants in fact "stood in the place of a parent to him." Rather they had nothing to do with him (not maliciously) while he, as one witness put it—"practically raised himself by himself from the time when he was about ten."

Furthermore, neither of them was in fact dependent upon him within the meaning of the statute. They needed the money he paid as a boarder as they did the one before him. Also it was established that while the deceased employee contributed only $8 a week from his salary the grandmother contributed her pension of $55 a month and the aunt contributed all she made. The truth of the matter would appear to be that instead of contributing to their support Robert was in fact receiving very low cost room and board.

It is therefore ordered—(1) that the claimants have not proven their claim and the same should be and is hereby dismissed, and (2) that the attorney for the claimants having failed to successfully prosecute the claim, he is not entitled to a fee.